UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Nancy Schlis

        v.                          Civil No. 19-cv-1201-JD
                                    Opinion No. 2021 DNH 068
Target Corporation


O R D E R

    Nancy Schlis brings this negligence action against Target
Corporation.[1]  Schlis asserts that Target's negligence in
maintaining and operating its Greenland, New Hampshire,
department store resulted in a slip and fall incident in which
she fractured her shoulder.  Target moves for summary judgment,
arguing that, considering the risks that were foreseeable to it,
Schlis cannot demonstrate that it breached any duty of care.
Schlis objects.


Standard of Review

    "Summary judgment is appropriate when the moving party
shows that 'there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law.'"
Joseph v. Lincare, Inc., 989 F.3d 147, 157 (1st Cir. 2021)
(quoting Fed. R. Civ. P. 56(a)).  In making that determination,

---

[1] Simeon Schlis previously filed a voluntary dismissal of
his loss of consortium claim against Target.

the court construes the record in the light most favorable to the nonmoving party.  Thompson v. Gold Medal Bakery, Inc., 989 F.3d 135, 141 (1st Cir. 2021).  To avoid summary judgment, the nonmoving party "must adduce specific facts showing that a trier of fact could reasonably find in his favor" and "cannot rely on conclusory allegations, improbable inferences, acrimonious invective, or rank speculation."  Id.

## Background

On February 20, 2018, Schlis was shopping in the baking aisle at Target's department store in Greenland, New Hampshire, when she slipped and fell backwards, landing on her back-left side.  Schlis was attended to by EMTs and left by ambulance. She was diagnosed with a fractured right shoulder.  Schlis was also bruised in various places.

Schlis could not see what she slipped on, but she was able to feel it underneath her.  After Schlis was removed by EMTs, Elizabeth Orr, who was the store manager, and Jill Barrows, another Target employee, investigated the cause of Schlis's fall.  They found a can of cooking spray oil with a broken top on a shelf near where Schlis fell.  Barrows wrote in a report that it looked as if oil had been sprayed on the shelf.  The oil that was on the floor was not visible to the naked eye, but it could be felt on the floor.  Orr and Barrows concluded that oil

2

from the can of cooking spray had leaked onto the floor and that Schlis had slipped on the oil.

Orr took three photographs of the location where Schlis fell and two of the spray can.  The photographs do not show where the spray can was in relation to Schlis's fall.[2]  There are, however, no cans of spray oil visible in the photographs taken of where Schlis fell.  The photographs of the spray can are close ups focused on the can's bar code and nutritional value information.  There appears to be oil absorbed by a paper towel behind the can.  Barrows stated in her deposition that she did not know whether the towel absorbed oil because the can was still leaking oil or because oil was on the can.

No one at Target measured the size of the spill on the floor before cleaning it up, and Barrows, in her deposition, could not recollect the exact size of the spill.  Target does not keep records of when employees walk aisles, and there were no cameras positioned toward the baking aisle, so there is no video of the incident.

Schlis provided as evidence in support of her objection to the motion for summary judgment the affidavit and expert report of David Dodge, who plans to testify as "an expert in the field of industrial and premises safety."  Doc. 15-10 at 1.  In his

---

[2] Barrows stated in her deposition that Schlis fell near a handbasket that is visible in the photographs.

report, he opines that vinyl flooring surfaces like the floors used at the Greenland Target are "impervious to liquid so that any spilled liquid stays on top of the flooring," which eliminates any slip-resistant characteristics of the floor.  Id. at 5.  He notes that, in contrast to the baking aisle, the entrance of the store uses flooring material that retains slip resistance when wet.

## Discussion

Target moves for summary judgment, arguing that Schlis cannot show that Target breached any duty it owed to her. Specifically, Target contends that its duty to keep its premises safe does not extend to Schlis's slip and fall because it was not reasonably foreseeable that Schlis could slip and fall on spilled oil in the baking aisle and because Schlis does not provide evidence showing that Target failed to comply with any applicable duty of care.  Schlis responds, arguing that there is circumstantial evidence from which a jury could infer that Target had constructive notice that a spill had occurred and that it was reasonably foreseeable that oil in the baking aisle could spill and create a hazardous condition.  She contends that Target failed to exercise reasonable care in detecting and correcting the spill and in choosing flooring material.

To recover for negligence under New Hampshire law, "a plaintiff must show that the defendant owes a duty to the plaintiff and that the defendant's breach of that duty caused the plaintiff's injuries." Christen v. Fiesta Shows, Inc., 170 N.H. 372, 375 (2017); Laramie v. Sears, Roebuck & Co., 142 N.H. 653, 655 (1998) (stating that, to prove negligence, a plaintiff must show "that the defendant owed the plaintiff[] a duty, that the duty was breached, that the plaintiff[] suffered an injury, and that the defendant's breach was the proximate cause of the injury."). "A premises owner owes a duty to entrants to use ordinary care to keep the premises in a reasonably safe condition[,] . . . to warn entrants of dangerous conditions[,] and to take reasonable precautions to protect them against foreseeable dangers arising out of the arrangements or use of the premises." Rallis v. Demoulas Super Markets, Inc., 159 N.H. 95, 99 (2009) (citations omitted); Pridham v. Cash & Carry Bldg. Ctr., Inc., 116 N.H. 292, 294–95 (1976) ("Furthermore there was a duty . . . to take reasonable precautions to protect [the invitee] against foreseeable dangers arising out of the arrangements or use of the premises.").

A.   Scope of Duty / Notice

Target contends that, even if it owes customers such as Schlis a general duty to detect and clean spills in its stores,

it cannot be held liable in this case because it was not
reasonably foreseeable to it that Schlis could slip and fall on
oil in the baking aisle.  Target argues that there is no
evidence that it knew a spill had occurred, that Schlis provides
no evidence indicating the spill was on the floor for a long
enough period of time for a jury to find it had a duty to
discover it and clean it up, and that the baking aisle of its
store is not a common location where merchandise spills occur.
Schlis responds that if Target had exercised reasonable care in
inspecting its aisles for dangerous conditions, it would have
discovered that the can was improperly placed on the bottom
shelf away from similar products and that it was leaking oil
onto the shelf and floor.

"[T]he scope of the duty imposed is limited by what risks,
if any, are reasonably foreseeable." Walls v. Oxford Mgmt. Co.,
137 N.H. 653, 656 (1993); see also Rallis, 159 N.H. at 99
(limiting duty to "foreseeable dangers").  "[T]he general rule
of tort liability is that '[i]f the defendant could not
reasonably foresee any injury as the result of his act, or if
his conduct was reasonable in light of what he could anticipate,
there is no negligence, and no liability.'" Vincent v. Pub.
Serv. Co. of New Hampshire, 129 N.H. 621, 624 (1987) (quoting
Paquette v. Joyce, 117 N.H. 832, 836-37 (1977)).

When, as in this case, negligence is asserted on the basis
of the property owner's "failure to remedy or warn of a
dangerous condition of which he knows or in the exercise of
reasonable care should know[,] the landowner's duty of care
depends upon whether he had actual or constructive notice of the
dangerous condition." Rallis, 159 N.H. at 99.[3]  Whether
constructive notice of the dangerous condition exists depends on
the factual circumstances surrounding and giving rise to the
condition.  See id. at 100-01 (discussing the factual
circumstances of previous cases and explaining that there are
several ways to prove constructive notice under New Hampshire
law); Tremblay v. Donnelly, 103 N.H. 498, 500 (1961) (holding
that, notwithstanding a defendant's lack of actual knowledge
about a dangerous condition, a jury can find negligence where a
dangerous condition can be anticipated and preventative steps
can be taken to avoid the condition).  Accordingly, whether the
defendant had constructive notice is generally a jury question.
Dyer v. Target Corp., 2014 WL 5323069, at *3 (D.N.H. Oct. 17,
2014) (citing Rallis, 159 N.H. at 99).

A genuine dispute of material fact exists as to whether the
risk that a person might slip and fall on spilled oil in the
baking aisle was reasonably foreseeable and as to whether Target

---

[3] Schlis does not argue that Target had actual notice of the
spill.

had constructive notice about the broken can and oil spill that caused Schlis's fall.  The lack of direct evidence about how long the oil was on the floor does not undermine Schlis's claim because the circumstantial evidence, viewed in Schlis's favor, is sufficient to create a genuine dispute of material fact about whether the spray can was broken for long enough that Target should have discovered it and taken steps to remedy the problem before Schlis fell.  See Rallis, 159 N.H. at 99-101.  It was reported that the shelf near where Schlis fell looked as if oil had been sprayed from the can onto it, but the oil on the floor was thin and not visible.  A jury could infer that the broken can first sprayed oil on the shelf where it was situated and then the oil dripped from the shelf to the floor where it accumulated and ultimately created a puddle large enough to cause Schlis's fall.  A jury could conclude that Target was on constructive notice of the spill because this process would have taken enough time that, had Target exercised reasonable care, it would have detected the broken can or the spill before Schlis fell.  See id. at 99.

Target's contention that hazardous spills in the baking aisle are uncommon also does not undermine Schlis's negligence claim.  A genuine dispute of material fact exists as to whether it was reasonably foreseeable that broken merchandise in the baking aisle could result in a slip and fall.  The evidence

presented at summary judgment supports a finding that packaging for oil-based products can sometimes fail or break and cause leaks.  In his affidavit and expert report, Dodge states that oil products present a danger for slipping and falling on Target's floors, as oil reduces the floor's slip resistance. Moreover, the Target employees and/or EMTs who arrived to help after Schlis fell noted that they could feel the slipperiness of the floor but could not see the spilled oil.  Therefore, a jury could reject Target's argument that it was not reasonably foreseeable that a person could slip and fall on spilled oil in the baking aisle.  See id.

    B.   Breach

    1.   Failure to Discover and Remedy Dangerous Condition

    Target contends that Schlis has no evidence that it failed to take reasonable care to detect broken or spilled merchandise or to remedy any dangerous condition caused by broken or spilled merchandise.  Schlis, however, has presented evidence sufficient to create a genuine dispute of material fact.  Despite the presence of oil products in the baking aisle[4] – products which, if broken or spilled, could cause a slipping hazard – the store

_____

    [4] Barrows stated in her deposition that the spray oil was in the correct aisle, but she did not know whether it was correctly placed in the right spot in the aisle.

9

manager did not consider the baking aisle to be a "problem area" for slips.  Doc. 14-5 ¶ 12 (affidavit of store manager); doc. 15-10 ¶¶ 5-6 (affidavit of proposed expert David Dodge stating that goods sold in baking aisle can create a slip hazard if spilled).[5]  Store employees "circulated" throughout the 81,769 square-feet of the store's sales floor and were told to look for spills as they did so, but there was no system in place to ensure that aisles with particular risks for dangerous spills were checked.  There is no evidence that, in this case, any Target employee had, in their "circulation" throughout the store, recently walked down the baking aisle.  The only employee who was near where Schlis fell had not recently been to the baking aisle.[6]  A jury could find that these efforts were insufficient to satisfy Target's duty to exercise reasonable

---

[5] The store manager did not elaborate in her affidavit about what areas of the store she did consider to be "problem areas."

[6] The employee, Corey Giallongo, indicated in his "witness statement" that he was stocking shelves two aisles away and that he heard the incident occur.  He did not state that he saw any other employee recently walk the baking aisle.  Barrows's "witness statement" indicates that other employees may have been in the area within thirty minutes before Schlis fell, but the statement does not note whether or when any of those employees walked the baking aisle specifically.

care to detect and remedy reasonably foreseeable dangerous
conditions.[7]

    2.   Compliance with Codes and Choice of Flooring

    Target also contends that it did not breach any duty of
care it owed to Schlis to make its premises reasonably safe or
to carry out its activities with reasonable care because it
complied with applicable building and safety codes as to the
slip resistance of its floors when it opened the Greenland store
in 2009.  Schlis responds, contending that Target's putative
compliance with the codes that were applicable in 2009 does not
render its conduct per se reasonable.  She refers to David
Dodge's affidavit and expert report, and, based on his opinion,
she argues that the flooring used in the baking aisle was not
reasonably safe.

    Dodge's expert report, in which he opines that Target's
choice of flooring in the baking aisle was unreasonable because

_____

    [7] Schlis also contends that Target's failure to adequately
document or preserve evidence that was probative of how long the
spray can was leaking is evidence of its negligence.  The court
does not address that argument at the summary judgment stage
because, regardless of whether Schlis's argument on that point
is correct, a genuine dispute of material fact exists as to
whether Target breached its duties to use ordinary care to keep
its store in a reasonably safe condition, to warn entrants of
dangerous conditions, or to take reasonable precautions to
protect entrants from foreseeable dangers arising from use of
the store.

it loses its slip resistance when liquids are spilled on it, is
sufficient to create a genuine dispute of material fact as to
whether Target breached its duty of care.  Although Target
contends that it complied with applicable building and safety
codes when the store opened in 2009, Target has not identified
any legal authority holding that complying with building or
safety codes applicable at the time of a building's construction
or initial opening <u>per se</u> satisfies its duty of care.

Conclusion

For the foregoing reasons, Target's motion for summary
judgment (doc. no. 14) is denied.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge


April 6, 2020

cc:  Counsel of Record.