UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Nancy Schlis

   v.                                              Civil No. 19-cv-1201-JD
                                                Opinion No. 2021 DNH 100

Target Corporation

O R D E R

Nancy Schlis brings this negligence action against Target Corporation. Schlis asserts that Target's negligence in maintaining and operating its Greenland, New Hampshire, department store resulted in a slip and fall incident in which she fractured her shoulder. The court denied Target's motion for summary judgment. Target now moves to exclude, under Federal Rule of Evidence 702, the expert report and testimony of Schlis's proposed expert witness David Dodge, who plans to testify about possible alternative flooring materials and safety procedures that Target could have used to prevent Schlis's fall.

Standard of Review

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert's opinion bears the burden of showing that it is admissible. Milward v. Rust-Oleum Corp., 820 F.3d 469, 473 (1st Cir. 2016); United States v. Tetioukhine, 725 F.3d 1, 6 (1st Cir. 2013). Once the expert's qualifications are established, the opinion is shown to be relevant, and the bases for the opinion are both sufficient and reliable, "the credibility and weight of the expert's opinion [are] for the factfinder." United States v. Jordan, 813 F.3d 442, 446 (1st Cir. 2016); see also Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993).

## Background

On February 20, 2018, Schlis slipped and fell on spilled cooking oil in the baking aisle in Target's Greenland, New Hampshire, store. Schlis filed this lawsuit and retained David Dodge as an expert witness. Dodge produced a report in which he concludes that Schlis fell "because the Target store owners and management did not provide a flooring material that would be

2

slip resistant under all foreseeable conditions. The failure to provide such a floor or the managerial system to continuously monitor the store for such foreseeable, unsafe conditions as spilled liquids was the direct cause of Ms. Schlis'[s] accident as she describes it." Doc. 19-2 at 2.

Dodge supports his conclusion by discussing the typical process for assessing potential risks in a retail store, which he derives from his experience and American National Standard Z244.1-2016.[1] He discusses the available options for a store to mitigate the risk of a person slipping and falling and their relative efficacy. For example, he states that use of warnings is less effective than providing a slip-resistant floor because provision of warnings requires a spill to be identified by store employees first. He suggests use of a continuously-monitored video system to improve store employee response time to spills. He also states that some stores use a systematic inspection system, where employees are assigned to inspect store aisles for spills. He asserts that this is less effective than a video-monitoring system, but more effective than Target's ad hoc approach.

Dodge also refers to an article, published in 2014, that he wrote in a magazine called "Mercantile Safety," in which he

---

[1] Dodge attached an excerpt of the standard to his report. Doc. 19-2 at 11.

3

discusses his view of best practices for risk management and safety in retail stores.  In the article, he refers to the International Building Code, the Life Safety Code, and the ASTM codes.

In addition, Dodge opines that the Life Safety Code and the International Building Code, as adopted by New Hampshire, require that flooring within a means of egress to be slip resistant under foreseeable conditions.  He opines that the area where Schlis slipped and fell therefore required the flooring to be slip resistant.

Dodge's conclusions are based primarily on his experience. According to his curriculum vitae, he has worked in the safety consulting field since 1971.  He holds a marine engineering degree from Maine Maritime Academy, and he has taken coursework in industrial safety at Northeastern University, Syracuse University, and the University of Massachusetts, Amherst.  He holds a "Certified Safety Professional" certification.  He is a member of the National Fire Protection Association and participated in the Committee on Mercantile and Business Occupancies for the Life Safety Code.  He has authored various publications on safety for magazines and state agencies.  He notes in his affidavit that his work as a safety consultant has included work for retail stores such as Hannaford.

## Discussion

Target moves to exclude Dodge's expert report and proposed expert testimony, arguing that he is not qualified to testify as an expert, that his opinions are not scientifically valid, and that his opinions would not be helpful to the jury. Schlis objects.

### A. Qualifications

Target argues that Dodge is not qualified to opine as an expert "with regard to [Target's] compliance with the subject building and life safety codes or Target's use of security surveillance . . . ." Doc. 19-1 at 3. Target contends that Dodge's education is in the field of marine engineering and that his only relevant education is coursework on industrial safety from Northeastern University, University of Massachusetts, and Syracuse University. Target argues that Dodge's employment as a loss-control consultant for manufacturing companies is insufficient to qualify him as an expert on safety standards in a retail setting. Target also asserts that Dodge does not have any indicated professional accomplishments related to building codes, fall protection, or security surveillance systems, nor is he a member of any relevant professional organizations on those subjects.

Schlis responds that Dodge is a "Certified Safety Professional" and has continually updated his education to maintain his certification to be a safety consultant across fifty years. Schlis notes that Dodge has previously been qualified as an expert on safety issues, even if his opinions have ultimately been excluded on other grounds. See Hecht v. Waterville Dev. Corp., 05-CV-462-PB, 2007 WL 542151, at *2 (D.N.H. Feb. 16, 2007).

Based on the current filings, Schlis has demonstrated that Dodge is sufficiently qualified to testify about the safety and risk management issues discussed in his report. See id. ("The court does not doubt that Mr. Dodge is an expert on safety issues."). While Dodge's college degree is in marine engineering, it is undisputed that his professional career, which spans fifty years, has been as a safety consultant. Dodge's education as an engineer does not detract from his professional experience. Furthermore, Dodge states in his affidavit attached to Schlis's objection to the motion to strike that, as part of his professional experience, he has worked specifically with retail stores, including Hannaford stores, which are retail supermarkets. Dodge's curriculum vitae further indicates that, contrary to Target's argument, he has professional accomplishments and membership in professional organizations related to safety consulting and the subject

matter of his opinion.  Target's motion is denied as to its challenge to Dodge's qualifications.

   B.   Scientific Validity / Reliability

Next, Target contends that Dodge's opinion is not scientifically valid.  Specifically, Target argues that Dodge uses the term "slippery" in his report, but he did not perform a coefficient of friction test on the flooring at issue.  Target also disagrees with Dodge's interpretation and application of the Life Safety Code.  It contends that Dodge speculates that use of a security surveillance system would have reduced the time it took Target employees to respond to spills and that a systemized inspection procedure would have been more likely to identify the spill as opposed to the procedure used by Target.

Schlis responds that Dodge's experience and reliance on national standards such as the Life Safety Code suffices to support his assertions.  Schlis notes that, although Dodge uses his own article in Mercantile Safety to support his theories, the article makes reference to and relies on "national standards and codes" and "other materials and sources."  Doc. 20 at 7. Schlis adds that "[i]f defense counsel wishes to voir dire Mr. Dodge on such issues before he issues certain opinions at trial, undersigned expects that the Court will be more than satisfied." Id.

An expert witness can testify on the basis of his experience. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 156 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702 advisory committee's note to 2000 amendments; see also Brown v. Wal-Mart Stores, Inc., 402 F. Supp. 2d 303, 308 (D. Me. 2005). Ultimately, it is the reliability of the expert witness's opinion that the court evaluates in its role as gate keeper, not its credibility. Lawes v. CSA Architects and Engineers LLP, 963 F.3d 72, 105 (1st Cir. 2020).

In this case, a test to determine the coefficient of friction of Target's flooring is not necessary to ascertain the reliability of Dodge's general observation that impermeable vinyl floors become slippery when exposed to oil or other liquids. As Target itself suggests, Dodge's observation is grounded in common sense. Doc. 19-1 at 8 ("Dodge is doing little more than stating common sense, that flooring may be

8

slippery.").[2] Additionally, Target's argument that Dodge incorrectly interpreted and applied the Life Safety Code in his report goes to credibility or weight, which may be addressed through cross examination. See Jordan, 813 F.3d at 446.

Schlis, however, has only made a minimally sufficient showing to support the reliability of Dodge's opinions about the relative efficacy of risk management strategies (i.e., video surveillance and systemized inspections). Although that is enough to avoid outright exclusion of those opinions at this stage, without further explanation from Dodge about how he has applied his training and experience to obtain the opinions presented in his report, the court does not have enough information to determine conclusively whether or not the opinions are reliable. Accordingly, before trial,[3] the parties will have the opportunity to question Dodge about his report and the materials on which it relies. See United States v. Diaz, 300 F.3d 66, 73-74 (1st Cir. 2002) (stating that "there is no particular procedure that the trial court is required to follow in executing its gatekeeping function under Daubert"); Hochen v. Bobst Group, Inc., 290 F.3d 446, 452 (1st Cir. 2002) (affirming

---

[2] Furthermore, whether the floor was "slippery" does not appear to be a disputed issue in this case.

[3] Trial in this case is currently set for the two-week period beginning September 8, 2021.

9

exclusion of expert opinion as unreliable after voir dire revealed that the proposed expert "showed little knowledge" in the relevant fields). After Dodge's voir dire examination, Target may reraise its objection to the reliability of Dodge's opinions as to the relative efficacy of risk management strategies.

### C. Relevance and Helpfulness to Jury

Target argues that Dodge's opinion will not help the jury determine anything for which an expert opinion is required. Target contends that Dodge's opinion is, in essence, that flooring can become slippery when wet, which is a common sense conclusion. Schlis responds that Dodge opines about the application of the Life Safety Codes to Target's flooring, risk assessment plans, and about the risks caused by liquids spilling on impervious vinyl flooring. Schlis contends that Dodge does not merely place an "expert sheen" on matters of common sense, but rather takes the facts and opines about whether Target satisfied applicable safety codes or applied appropriate risk management plans considering the risks.

To testify as an expert, a witness must provide knowledge that will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); United States v. Shay, 57 F.3d 126, 132-33 (1st Cir. 1995) ("The

fundamental question that a court must answer in determining whether a proposed expert's testimony will assist the trier of fact is 'whether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved.'"). Expert testimony does not help the trier of fact if it can be derived from common sense or experience, the jury's perceptions, or simple logic. See Jenks v. New Hampshire Motor Speedway, 2012 WL 405479, at *5 (D.N.H. Feb. 8, 2012) ("A statement of the obvious which is within the ken of a lay jury is not the proper subject of expert testimony.").

Target misunderstands the scope and purpose of Dodge's expert opinion. In support of his conclusions in his written report, Dodge observes that vinyl flooring becomes slippery when wet, which Target contends is a fact that an untrained layman could determine. Based on that foundational observation, however, Dodge opines that Target should have used different flooring or altered the flooring so that it complied with applicable safety codes.

The slipperiness of Target's flooring when exposed to oil is a relevant, even if obvious, supporting fact for the opinion, but it is not where the probative value of the opinion lies. Rather, Dodge opines that, because of its characteristics,

11

Target's flooring did not comply with applicable safety codes, that there were alternative flooring options available with better characteristics that would have prevented Schlis's fall, and that Target could have taken extra steps to discover the spill before Schlis fell by implementing an alternative risk management plan, such as video surveillance and systemized inspections. Testimony by a person with experience and expertise on these issues would be helpful to the jury, which will not have a technical understanding of safety codes or about the availability or feasibility of alternative flooring options or risk management plans. Therefore, Target's motion to strike Dodge's report and preclude his testimony on these grounds is denied.[4]

---

[4] Target also presents the court with the text of Federal Rule of Civil Procedure 26(b)(2)(B) and states that, considering this rule, Dodge should be precluded from offering testimony on matters not contained within his written report. Target, however, fails to make any objection to a specific matter that is not contained within Dodge's expert report. It is up to counsel, not the court, to identify and object to rules violations in a sufficiently specific manner so that the court can make a meaningful ruling. E.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Conclusion

For the foregoing reasons, Target's motion to exclude the expert report and testimony of David Dodge (doc. no. 19) is denied without prejudice to Target's option to challenge pretrial Dodge's opinions about the relative efficacy of alternative risk management strategies (i.e., video monitoring and systemized inspections). Counsel shall contact the courtroom deputy to schedule the voir dire hearing during the latter part of August.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

June 24, 2021

cc: Counsel of Record.